# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

SJB GROUP, LLC AND
CATLIN INSURANCE CO., INC.

CIVIL ACTION

VERSUS

NO. 12-181-SDD-RLB

TBE GROUP, INC.

## RULING

Before the Court is Plaintiffs', SJB Group, LLC ("SJB") and Catlin Insurance Company, Inc. ("Catlin"), *Daubert* Motion seeking to exclude or limit the testimony of Defendant's, TBE Group Inc. ("TBE"), proposed expert, Louis G. Fey, Jr. TBE has filed an opposition[1] to which Plaintiffs submitted a reply.[2] For the following reasons, Plaintiffs' motion is GRANTED.

## I.  FACTUAL BACKGROUND

This matter arises out of a Louisiana Department of Transportation and Development State Project No. 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 ("Project") that involved the widening of a 1.91 mile stretch of Interstate 12 between O'Neal Lane in East Baton Rouge Parish to Range Road in Livingston Parish.[3] Defendant, TBE, entered into a General Services Agreement[4] with James Construction Group, LLC ("James") whereby TBE agreed to provide certain Subsurface Utility Engineering ("SUE") specifically locating and identifying underground utilities such as water, sewer, and gas mains, fiber optic cables, or telephone lines that could impact the Project and other related services for the

---

[1] Rec. Doc. 52.
[2] Rec. Doc. 67.
[3] Rec. Doc. 1, p.2, ¶6.
[4] The General Services Agreement is dated April 2, 2009.

1

Project.[5] TBE was required to prepare and deliver a "Utility Design/SUE Report" and related deliverables to James.[6] On April 29, 2009, TBE and Plaintiff, SJB, allegedly entered into a Subcontract for Professional Services, whereby SJB agreed to provide certain surveying services in connection with TBE's SUE work for the Project and to prepare and provide a utilities sketch to TBE showing the locations of various utilities according to markings and other information provided by TBE.[7]

Plaintiffs contend that, pursuant to the James-SJB Subcontract, TBE had a contractual obligation to perform QA/QC oversight of SJB's work.[8] On May 19, 2009, SJB allegedly submitted a "preliminary" utility sketch to TBE to review, approve, and/or request revisions.[9] TBE allegedly requested the final sketch from SJB on May 26, 2009 without requesting any changes to the preliminary document.[10] Ultimately, Plaintiffs allege that TBE's failure to review the sketch and provide necessary quality assurance and quality control resulted in erroneous plans for bridge work on the Project, thereby causing a significant delay in the progress on the Project and additional costs to correct the errors (specifically relocate sewer force main).[11]

According to the *Complaint*, TBE proposed a Subcontract for Remedial Professional and Construction Services between TBE and SJB that would have made SJB responsible for all remedial relocation costs, including compensating TBE for "oversight" services.[12] SJB allegedly rejected the terms because it considered TBE to

---

[5] Rec. Doc. 1, pp. 2-3, ¶¶8-9. Plaintiffs attached a copy of the General Services Agreement to the Complaint.
[6] Rec. Doc. 1, p. 3, ¶14.
[7] Rec. Doc. 1, p. 3, ¶11-12.
[8] Rec. Doc. 1, p. 3, ¶13.
[9] Rec. Doc. 1, pp. 3-4, ¶16.
[10] Rec. Doc. 1, p. 4, ¶17.
[11] Rec. Doc. 1.
[12] Rec. Doc. 1, p. 5, ¶27.

2

be responsible, at least in part, for the ensuing problems.[13] In an effort to mitigate its damages and to avoid a claim by James, SJB and Catlin funded the remedial relocation work and retained a local contractor to complete the work.[14] The remedial relocation work cost Catlin $492,984.28, while SJB contends it incurred additional "in-house" costs and expenses totaling $80,384.00.[15] On March 28, 2012, Plaintiffs filed this suit against TBE asserting claims for breach of contract, professional negligence, detrimental reliance and/or equitable estoppel, reimbursement, indemnity, contribution and/or subrogation, and in the alternative for unjust enrichment.

Subsequently, TBE filed a counterclaim against SJB alleging that SJB was contractually obliged to provide Professional Surveying Services by a Louisiana-licensed professional engineer and that "SJB was obligated to perform all surveying services, including QA/QC of the survey work".[16]

On June 21, 2013, Plaintiffs filed the pending motion seeking to exclude or limit the testimony of Defendant's expert, Louis G. Fey, principally on the grounds that TBE's expert's opinions draw impermissible legal conclusions.[17] Plaintiffs also object to opinion testimony by Fey because it relies on his subjective beliefs and unsupported speculation.[18]

## II. LAW AND ANALYSIS

"A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence."[19] In *Daubert v. Merrell Dow Pharmaceuticals*, the United

---

[13] Rec Doc. 1, p. 5, ¶¶ 28-29.
[14] Rec. Doc. 1, p. 6, ¶30.
[15] Rec. Doc. 1, pp. 5-6, ¶¶35-36.
[16] Rec. Doc. 15.
[17] Fed. R. Evid. 702.
[18] Fed. R. Evid. 403.
[19] *Smith v. Florida Marine Transporters, Inc.*, 2011 WL 6440881, at *1 (E.D.La. 2011).

3

States Supreme Court acknowledged that Federal Rule of Evidence 702 "serves as the proper standard for determining the admissibility of expert testimony."[20] The purpose of *Daubert* is "to ensure that only reliable and relevant expert testimony is presented to the jury."[21] Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The trial court must "conduct preliminary fact-finding and make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.'"[22] The party seeking to admit an expert's testimony must demonstrate to the Court that "the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology. The expert's assurances that he

---

[20] *Diamond Offshore Co. v. Survival Systems Intern., Inc.*, 2013 WL 371648, at *2 (slip copy)(S.D.Tx. 2013).
[21] *Deville v. Comar Marine Corp., et al.*, 2009 WL 1870896, at *1 (citing *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999)(superseded by rule on other grounds)).
[22] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, at 276 (5th Cir. 1998)(citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, at 597).

4

has utilized generally accepted scientific methodology is insufficient." [23] "The goal is to exclude expert testimony that is based merely on subjective belief or unsupported speculation."[24] Furthermore, "[t]he expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[25]

SJB and Catlin seek to have Defendant's expert's testimony excluded or limited. In his report, Louis G. Fey ("Fey") explains that he was retained as an expert witness to "consult on matters involving the standard practice and custom of the insurance industry with regard to providing additional insured (AI) status to higher tiered General Contractors (GC's), and design professionals or engineers, in Professional Liability, General Liability, and Umbrella/Excess Liability policies, by lower tiered Professionals."[26] In particular, Defendant sought Fey's expert opinion regarding the following three inquiries or issues:

(1) "whether or not, based upon the standard practice in the insurance industry, SJB should have caused both James and TBE to be covered as additional insureds under SJB's – Catlin Professional Liability/Errors and Omissions Insurance Policy";

(2) "whether or not this type of contractual obligation is common practice, customary, and whether or not such coverage was available in the insurance market at the time these contracts were signed"; and

---

[23] *Id.* at 276. See also, *Diamond Offshore Co. v. Survival Systems Intern., Inc.*, 2013 WL 371648, at *2 (slip copy)(S.D.Tx. 2013).
[24] *Smith v. Florida Marine Transporters, Inc.*, 2011 WL 6440881, at *1 (E.D.La. 2011).
[25] *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, at 584 (5th Cir. 2003).
[26] Rec. Doc. 32-2, Expert Report, Louis G. Fey Jr., CPCU, CIC, AIC, Fey Consulting LLC, p. 2.

5

(3) "[he] examined Catlin's subrogation potential from an insurance perspective."[27]

In its opposition, TBE further explains that Fey's testimony offers an opinion on the requirement to name TBE as an additional insured, Catlin's subrogation potential, availability of additional insurance coverage, and the industry's perspective on voluntary payment.[28]

## A. Contractual Interpretation

Plaintiffs' motion to exclude opinion testimony which makes legal conclusions is granted. Although Expert Fey may not have intended to provide a legal conclusion, that is, in fact, what he offered in the "Analysis of the Contracts" section of his expert report. In this section, Fey interpreted the SJB-TBE Subcontract for Professional Services and the James-TBE General Services Agreement. Contractual interpretation is a question of law.[29] Likewise, opinions offered as to the scope of one's contractual duties amounts to a legal conclusion.[30] "Federal courts have consistently held that expert testimony on issues of contractual interpretation is inappropriate and that such issues are reserved for the judge and jury."[31] Furthermore, to "allow an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."[32] Accordingly, Fey's expert opinions as to the contractual obligations of the parties to the SJB-TBE Subcontract for Professional Services and the James-TBE General Services Agreement shall be excluded as they are legal conclusions. Nor may

---

[27] Rec. Doc. 32-2, Expert Report, Louis G. Fey Jr., CPCU, CIC, AIC, Fey Consulting LLC, p. 2.
[28] Rec. Doc. 52, pp. 9-10.
[29] *Estate of Ray v. C.I. R.*, 112 F.3d 194, at 196 (5th Cir. 1997); see also, *South Cent. Bell Telephone Co. v. Allnet Communications Services, Inc.*, 986 F.2d 1418, at *3 (5th Cir. 1993).
[30] *Hanspard v. Otis Elevator Co.*, 2007 WL 839994, at *2 (W.D. La. 2007).
[31] *DP Concrete Prods., LLC v. Am. Spring Wire Corp.*, 2010 WL 322739 at *1 (W.D. La. 2010).
[32] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, at 240 (5th Cir. 1983).

expert Fey offer any testimony or give any opinion as to the interpretation of these contracts, or the scope of the contracting parties.

## B. Testimony Regarding Standards and Customs in the Insurance Industry

In TBE's *Opposition* to the Plaintiffs' *Daubert* Motion, TBE delineates several issues for which Fey will offer an opinion, including the following: "[r]egarding the standard practice and custom of the insurance industry with regard to providing additional insured status to higher tiered design professionals or engineers in professional liability policies by lowered tiered professionals;" [t]hat the provision related to coverage for liability assumed in a contract that would exist in the absence of such contract is a standard policy provision, and that its purpose is to provide coverage for vicarious liability;" " [t]hat waivers of the insurer's subrogation rights are very common in construction related claim scenarios and contracts;" "[r]egarding the purpose of subrogation waivers and why they are required from a contractual risk transfer perspective;" "[t]hat it is common practice to require subcontractors to add higher tiers as additional insureds in professional liability policies;" "[t]hat the purpose of higher tiered professionals requiring additional insured status from lower tiered professional subcontractor's policies is part of 'contractual risk transfer,' such that losses to the lower tiered subcontractor's work fall under that subcontractor's policy rather than eroding the higher tiered professional's policy limit and impacting its loss history;" and "[t]hat is very odd from an insurance perspective to pay a claim on behalf of a party and then assert that the party is not covered under the policy as an insured or additional insured."[33] TBE relies on *McDermott International, Inc., v. Industrial Risk Insurers*, in which a construction company sued its insurance provider, to support its position that Fey

---

[33] Rec. Doc. 52, pp. 6-7.

should be allowed to offer expert testimony as to the customs and practices of the insurance industry.[34]

In their reply, Plaintiffs counter that none of these points are relevant to any material factual issue in this case and, therefore, will not assist the trier of fact. The Court agrees. This case will ultimately boil down to whether the parties acted in accordance with the terms of the various contracts or agreements and which entity, if any, acted negligently. Nor has TBE raised the affirmative defense of waiver of subrogation; therefore, an opinion on this issue is not relevant as it would not assist the jury or trier of fact. Therefore, the Court further finds that Fey's opinions regarding the custom or industry standard in the insurance industry will not be admissible.

## C.  Speculative and Irrelevant Testimony

TBE seeks to offer Fey as expert for his opinion that "he could have obtained additional coverage for the project on SJB's professional liability policy."[35] The Court finds, however, that this is an irrelevant issue and purely speculative.[36] As noted by the Plaintiffs, Fey could not offer any response for the more apt inquiry of whether such additional insurance coverage, had it been obtained, would have provided coverage for TBE's own negligence. In his deposition, Fey was unable to answer this question and acknowledged that it would depend on the particular endorsement form used. Similarly, Fey's testimony that "the insurance industry offers project professional policies which would have covered both SJB and TBE on the project" is also irrelevant as the coverage

---

[34] *McDermott International, Inc. v. Industrial Risk Insurers*, 2008 WL 5120694 (E.D.La. 2008).
[35] Rec. Doc. 52, p. 6.
[36] Fey's opinion was based on his review of the pleadings, the SJB-TBE Subcontract for Professional Services, the James-TBE General Services Agreement, and four professional liability insurance policies (two being broker's copies) for SJB over various time spans. Rec. Doc. 32-2, Expert Report, Louis G. Fey Jr., CPCU, CIC, AIC, Fey Consulting LLC, pp. 5-6.

8

required under the contract is uncontested. As evidenced by Fey's deposition testimony, he also lacks first-hand knowledge as to the practices of Catlin; therefore, his opinions related to Catlin's practices are speculative and shall be excluded. Therefore, the Court finds that Fey's testimony as to these issues is purely speculative and irrelevant.

TBE also seeks to introduce Fey's testimony regarding a voluntary payee principle or analysis. Fey's proffered opinion is "[t]hat according to insurance industry standards, payments on behalf of parties who are not entitled to coverage under a policy are considered to be voluntary and made on the insurer's own behalf." Fey's report and deposition fail to articulate a credible methodology or make reference to those guidelines or publications upon which he relied to sustain his conclusions. Moreover, the Court finds that this statement amounts to a legal conclusion. Therefore, because the Court finds that Fey's opinion on the voluntary principle or analysis amounts to unsupported speculation and offers a legal conclusion, his testimony shall be excluded.

### III. CONCLUSION

Accordingly, Plaintiffs' *Daubert* Motion seeking to exclude or limit the testimony of Defendant's proposed expert, Louis G. Fey, Jr., is GRANTED.[37]

Baton Rouge, Louisiana, this 19th day of August, 2013.

*Shelly D. Dick*
SHELLY D. DICK, DISTRICT JUDGE

---

[37] Rec. Doc. 33.

MIDDLE DISTRICT OF LOUISIANA